**DEL'S BIG SAVER FOODS, INC., a Wisconsin corporation, and Burdell Robish and Janis Robish, Plaintiffs,**

v.

**CARPENTER COOK, INC., a Michigan corporation, Farm House Foods Corp., a Wisconsin corporation, Doyle, Ladd and Philips, P.C., a Michigan professional corporation, Philip Strohl, United States Fidelity & Guaranty Co., a foreign insurance corporation, Defendants.**

No. 84–C–191–C.

United States District Court,
W.D. Wisconsin.

March 1, 1985.

Rhea A. Myers, Terwilliger, Wakeen, Piehler, Conway & Klingberg, S.C., Wausau, Wis., for plaintiffs.

Eugene O. Gehl, Brynelson, Herrick, Gehl & Bucaida, Madison, Wis., for defendant Doyle, Ladd & Philips, P.C.

Charles H. Bohl and Thomas J. Arenz, Frisch, Dudek & Slattery, Ltd., Milwaukee, Wis., for remaining defendants.

CRABB, Chief Judge.

This is a civil action for monetary relief brought pursuant to 42 U.S.C. § 1983 for violation of plaintiffs' constitutional rights. Plaintiffs also assert state law claims against defendants under the principle of pendent jurisdiction. The case is before the court pursuant to defendants' motion to dismiss plaintiff's first amended complaint for failure to state a claim upon which relief can be granted.

Reading the allegations of the complaint and the exhibits attached to it liberally in favor of plaintiffs, I find that the plaintiffs have alleged the following facts. For the purpose of deciding this motion, I accept their allegations as true.

## FACTS

Before December of 1983, plaintiffs Burdell and Janice Robish owned and operated Del's Big Saver Foods, Inc., a retail grocery store. In July of 1983, in order to finance their business, the plaintiffs individually and as officers of their incorporated store, signed a note and security agreement, giving defendant Carpenter Cook Company, a subsidiary of defendant Farm House Foods Corporation, a security interest in "[a]ll furniture, fixtures, equipment, now owned or hereafter acquired by the [b]orrower, together with all inventory ... [and] the proceeds from the sale thereof."

On December 6, 1983, the defendant law firm of Doyle, Ladd & Philips, P.C. filed a complaint in the Circuit Court of Vilas County, Wisconsin on behalf of defendant Carpenter Cook, alleging among other things that Burdell and Janis Robish had repeatedly defaulted on their note, that Carpenter Cook had a security interest in some of the Robishes' property, and that pursuant to Wis.Stats. § 409.503 (Wisconsin's Commercial Code), Carpenter Cook was entitled to possession of the property. Along with the complaint, defendant Carpenter Cook submitted an affidavit in support of its motion for possession of the secured property. In the affidavit, Philip Strohl, an officer of Carpenter Cook, stated that the Robishes had defaulted repeatedly on their loan and had breached other covenants of the security agreement. Strohl asserted that the collateral would deteriorate in the hands of the Robishes. Also, Strohl stated the value of the collateral and its location. Defendant Carpenter Cook submitted to the court a $100,000 indemnity bond issued by defendant United States Fidelity & Guaranty Company.

On December 6, 1983, the day the complaint was filed in the Vilas County court, the state trial judge issued an order granting defendant Carpenter Cook immediate possession of the collateral, the right to operate the Robishes' store as a going concern, and the right to use the proceeds from the sale of the collateral "in the operation of the store." That same day, defendant Strohl, as agent for defendant Carpenter Cook, with the aid of the defendant law firm, obtained certification of the order from the deputy clerk of the Circuit Court of Vilas County. Members of the defendant law firm then proceeded to plaintiffs' store, claiming that if plaintiffs did not turn over possession of the store, the county sheriff would be summoned pursuant to the court order to serve the documents and remove the plaintiffs bodily. In response to these demands, plaintiffs turned over the premises to defendant Carpenter Cook.

Plaintiffs had no notice of defendant Carpenter Cook's intent to take possession of

the store, or of the court proceedings to gain possession, until the order was presented to them on December 6, 1983. Plaintiffs would not have relinquished possession of the store but for the court order signed by the circuit judge.

## OPINION

Plaintiffs set out four causes of action in their complaint, in each of which they claim a deprivation of their property and livelihood without notice and opportunity to be heard as required by the Fourteenth Amendment to the United States Constitution. In their first cause of action, they allege that Wis.Stats. § 409.503 of the Wisconsin Commercial Code is unconstitutional as applied to them. Specifically, they allege that § 409.503 "in the manner in which the defendant's used it, is unconstitutional as to its effect in that it denied the plaintiff their property rights ..." and that the state trial judge assisted the defendants in this unconstitutional application of the statute.

Plaintiffs' second cause of action is essentially the same as the first, adding only that the defendants "intentionally" deprived plaintiffs of their constitutional rights.

For their third cause of action, plaintiffs allege breaches of the due process clause in even more general terms, but add various state law claims for the intentional infliction of harm to their business reputation.

In the fourth cause of action it appears at first that plaintiffs are alleging that Wisconsin's repossession procedures are unconstitutional on their face. In paragraph 41 they allege that "[t]he state created the attachment procedure used in the case when the court order was issued." I conclude however that, read in its entirety, the fourth cause of action merely realleges the unconstitutional application of Wisconsin statutes to plaintiffs. In sum, plaintiffs have alleged two causes of action: (1) that in concert with defendants Carpenter Cook (through its agent Strohl) and Doyle, Ladd and Philips, the state trial judge applied Wisconsin's repossession procedures in violation of plaintiffs' due process rights; and (2) that these same defendants intentionally damaged plaintiffs' business reputation in violation of state law. Plaintiffs alleged no cause of action against defendant United States Fidelity & Guaranty Company and its motion to dismiss will be granted.

*Plaintiff's Claim under 42 U.S.C. § 1983*

Before a plaintiff can prevail on a claim brought pursuant to 42 U.S.C. § 1983, he must prove (1) that the defendant has deprived him of a right secured by the Constitution or the laws of the United States; and (2) that the defendant has deprived him of this right under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## I. Deprivation of a Constitutional Right

Plaintiffs contend that the state judge's application of Wis.Stats. § 409.503 to them deprived them of their Fourteenth Amendment right to due process because their property was taken without notice or an opportunity to contest the repossession. Plaintiffs cite the line of Supreme Court cases beginning with *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and culminating in *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), for the proposition that it is a denial of due process for a creditor to repossess property upon *ex parte* application to a court without giving the debtor notice or an opportunity to contest the taking. Not surprisingly, the defendants cite those same cases to support their claim that plaintiffs in this case have not been denied their constitutional rights.

### 1. Due Process Precedent

*Sniadach* arose out of a challenge to a Wisconsin statute permitting a creditor to freeze the debtor's wages upon application to the clerk of the state court without affording the debtor notice or an opportunity to be heard. The United States Supreme Court ruled that in the context of wages a debtor's property may not be taken without

notice and a prior hearing. *Sniadach v. Family Finance Corp.*, 395 U.S. at 340–342, 89 S.Ct. at 1822–1823.

In *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Court reviewed a state procedure under which a creditor could obtain a prejudgment writ of replevin through a summary process of *ex parte* application to a court clerk, upon the posting of a bond for double the value of the property to be seized. The Supreme Court held that these state replevin procedures were unconstitutional because they deprived the debtor of notice and an opportunity to be heard *before* his property was seized. *Id.* at 96, 92 S.Ct. at 2002. The Court explained that even though the debtor had access to certain post-deprivation remedies, those remedies were only "another factor to weigh in determining the appropriate form of hearing, [and were] not decisive of the basic right to a prior hearing of some kind." *Id.* at 86, 92 S.Ct. at 1997.

In *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the Court retreated from its position in *Fuentes*. In *Mitchell*, the Court was reviewing provisions of the Louisiana Code of Civil Procedure that made available to a lien holder a writ of sequestration to forestall waste or alienation of the encumbered property. Although the writ was obtainable on the creditor's *ex parte* application, without notice to the debtor or an opportunity for a hearing, the writ would issue only upon a detailed affidavit by the creditor and only upon a judge's authorization after the creditor had filed a sufficient bond. The debtor could seek immediate dissolution of the writ, which had to be ordered unless the creditor proved the grounds for issuance (existence of the debt, lien, and delinquency), failing which the court could order return of the property and assess damages in the debtor's favor. The Court found that the Louisiana procedures satisfied the requirements of the due process clause despite the fact that they permitted an *ex parte* deprivation of property: the statutory scheme decreased the likelihood of an erroneous pre-hearing deprivation because the creditor had to present detailed factual allegations to a *judicial* officer before a sequestration order could be issued, *Id.* at 616–617, 94 S.Ct. at 1904–1905, and statutory procedures did not effect a final deprivation of property because the debtor had an immediate right to a post-seizure hearing. *Id.* at 609–610, 94 S.Ct. at 1900–1901. From this, the Court concluded that because the statute provided certain pre-deprivation procedures designed to reduce erroneous deprivations, and because the deprivation was only temporary, the Louisiana procedures effected a constitutional accommodation of the interests of debtors and creditors. *Id.* at 607, 94 S.Ct. at 1900.

Finally, in *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. at 601, 95 S.Ct. at 720, the Supreme Court examined a Georgia statutory scheme that permitted a creditor to obtain a writ of garnishment issued by a court clerk on an affidavit containing only conclusory allegations and that permitted the debtor to dissolve the garnishment only by filing a bond with the court. The Court held that the garnishment of the debtor's bank account was unconstitutional because there were no pre-deprivation protections as in *Mitchell*, and because the debtor was not entitled to an immediate hearing after seizure to dissolve the writ. *Id.* at 607, 95 S.Ct. at 722.

From these cases, I conclude that in creditor repossession or garnishment cases, the due process clause requires either (1) that the debtor be provided a hearing before his property is taken, or (2) that the debtor be provided certain pre-seizure procedural safeguards, coupled with a prompt post-deprivation hearing before final judgment. Those pre-seizure safeguards need not include a hearing, but must include a deprivation order issuable only by a judicial officer based upon detailed factual allegations provided by the party seeking possession.

In this case, since I must accept as true plaintiffs' allegation that they did not receive a hearing prior to the seizure of their

property, I can grant defendants' motion for summary judgment only if I am satisfied that plaintiffs had the benefit of the requisite pre-deprivation procedures and the right to a post-deprivation hearing pending final judgment.

## 2. Wisconsin Procedures

The plaintiffs base their claim on what they contend is the state judge's unconstitutional application of Wis.Stats. § 409.503. That section, which corresponds to § 9.503 of the Uniform Commercial Code, gives a secured creditor the right to take possession of a defaulting debtor's secured property. It provides that "[i]n taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed *by action.*" (Emphasis added.) Since the defendants Carpenter Cook, Philip Strohl, and Doyle, Ladd & Philipps resorted to the courts to seize plaintiffs' property, they proceeded "by action." Plaintiffs' claim is that the state judge misapplied the "by action" method of repossession by permitting a deprivation which fell short of plaintiffs' right to due process.

The text of the UCC and the Official Comments to § 9–503 fail to provide any guidance to the meaning of "by action."

However, the courts and commentators agree that "by action" refers to the applicable state's replevin procedures.[1] *Honstein Trucking v. Sandhills Beef, Inc.*, 209 Neb. 422, 308 N.W.2d 331, 335 (1981) (an action for replevin is provided for under the plain terms of § 9–503); *Wolf v. Kutch*, 147 Wis. 209, 132 N.W. 981 (1911) (under a clause on a chattel mortgage authorizing the mortgagee to take possession at any time he shall deem himself insecure, he may demand possession immediately, and if refused, bring replevin for the property); J. White & R. Summers, Handbook of the Law Under the Uniform Criminal Code, § 26–27 (2d ed. 1980).

■ It appears that the 1977 revisions of the Wisconsin replevin procedures were drafted specifically in response to the Supreme Court's holdings in *Mitchell* and *North Georgia Finishing.* The pre-seizure requirements set out in those cases are satisfied by the provision in the Wisconsin replevin procedures that an order directing a return of the property may be issued only by a judge or other judicial officer and only after the creditor has submitted a verified complaint or affidavit containing several detailed allegations specified in the statute.[2] Also, the replevin statutes provide

---

1. Plaintiffs have moved to strike the section of the reply brief filed by defendants Doyle, Ladd, and Philips, P.C. in which these defendants argued that defendants followed the procedures outlined in the replevin statutes (Chapter 810, Wis.Stats.) Plaintiffs contend that this argument had never been raised before and should not be considered by the court. I reject plaintiffs' contention. Defendants did refer to the requirements of Chapter 810 in their first brief and plaintiffs had an opportunity to respond. Moreover, I would be free to consider the applicability of Chapter 810 to plaintiffs' claims even if defendants had not raised it. In deciding questions of law, courts are not prohibited from going beyond the arguments and precedent raised by counsel to reach what the court believes to be a correct interpretation of the constitutional or statutory provision at issue.

2. Wis.Stats. § 810.02 provides:
   An order directing the return of property to the plaintiff at any time before final judgment in a replevin action shall be issued only by a judge or other judicial officer on the affidavit

of the plaintiff made after summons is issued. The affidavit or verified complaint shall set forth specific factual allegations to show the following:
   (1) That the plaintiff is entitled to the possession of the property claimed, particularly describing it;
   (2) That the property is wrongfully detained by the defendant;
   (3) The alleged cause of detention according to his best knowledge, information and belief;
   (4) That the property has not been taken for a tax, assessment or fine or seized under any execution or attachment against the property of the plaintiff, or that if so seized that it is exempt from the seizure;
   (5) The value of the property; and
   (6) The location of the property claimed by the plaintiff with sufficient specific factual allegations for the judge or judicial officer to determine that there is reason to believe that the property is in the location described or in the possession of the defendant or any person acting on behalf of, subject to or in concert with the defendant.

that at any time the debtor may request a hearing before the judge for vacation or modification of the possession order "for any sufficient cause." Wis.Stats. § 810.05. Moreover, the statutes make it clear that the *ex parte* seizures merely provide for delivery before final judgment.[3]

3. Application of § 409.503 and Chapter 810

The undisputed facts of the seizure in this case reveal that the state court judge did not deprive plaintiffs of their constitutional rights. Carpenter Cook's state court affidavit and complaint incorporated by exhibit into the Robishes' complaint in this case establish that defendants complied with Wis.Stats. § 810.02. Thus plaintiffs cannot contend that the judge abridged their pre-seizure rights. Also, because the judge merely granted an order for possession, rather than entering a final judgment, plaintiffs had an opportunity to seek an immediate post-seizure hearing. Whether plaintiffs exercised their right to a hearing is irrelevant to this discussion. The due process clause guarantees only the "right to an *opportunity* to be heard ... [and thus] ... no hearing need be held unless the [debtor], having received notice of his opportunity, takes advantage of it." *Fuentes v. Shevin*, 407 U.S. at 92 n. 29, 92 S.Ct. at 2000 n. 29 (emphasis in original).[4] Because the judge complied with the plaintiffs' pre-seizure procedural rights and did not deny them a post-seizure hearing, plaintiffs cannot prevail on their claim that their due process rights were violated.

### II. State Law Claims

Because there is not complete diversity of citizenship among the parties in this case, this court's jurisdiction is based solely on plaintiffs' federal claims which must be dismissed. There remains the question whether to exercise jurisdiction over plaintiffs' pendent state law claim of intentional damage to their business reputation.

The exercise of jurisdiction in this case is discretionary. *Perdido v. Immigration and Naturalization Service*, 420 F.2d 1179 (5th Cir.1969). However, the Supreme Court has made it clear that "if the federal claims are dismissed before trial, even though [the federal claims are] not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See also* Wright, Law of Federal Courts 106 (4th ed. 1983). Thus, the plaintiffs' state law claims must be dismissed and left to the state courts for resolution.

### III. Claim Against United States Fidelity & Guaranty Co.

Defendant United States Fidelity & Guaranty supplied the indemnity bond required by Wis.Stats. § 810.03 to acquire an order for repossession. Plaintiffs have joined United States Fidelity & Guaranty as a co-defendant in this action. However, they have alleged no cause of action against it. Although the pleadings are to be liberally construed in the litigant's favor, a complaint must set forth as to each defendant "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Federal Rules of Civil Procedure. Even assuming for the purpose of argument that plaintiffs have satisfied this minimal burden through the incorporation of defendant United States Fidelity & Guaranty's indemnity contract into their pleadings, plaintiffs must first allege a justiciable claim against defendant Carpenter Cook as the party primarily liable on the bond in order to trigger any potential liability on the part of defendant United States Fidelity & Guaranty. Wis.

---

3. Wis.Stats. § 810.01 provides:

The plaintiff in a replevin action may claim the delivery of the property *prior to final judgment* in a manner provided in this chapter. (Emphasis added.)

4. *See R & W Farms, Inc. v. Grand River Co-op*, 589 F.Supp. 860 (E.D.Wis.1984) and *Franco v. County of Marin*, 579 F.Supp. 1032 (N.D.Cal. 1984), for the proposition that 42 U.S.C. § 1983 is not a substitute for pursuing claims under established state procedures in state tribunals.

Stats. § 810.15. Since plaintiffs' claims against defendant Carpenter Cook will be dismissed for failure to state a claim for relief and for lack of jurisdiction, any claims against defendant United States Fidelity & Guaranty must fail also.

### ORDER

IT IS ORDERED that defendants' motion to dismiss this case is GRANTED. Plaintiffs' motion to strike the reply brief of defendants Doyle, Ladd and Philips, P.C. is DENIED.