Filed 6/3/26  Reid v. Givens-Morgan CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DEBRA ANN REID, | B342837, B347044 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STPB00326) |
| v. | |
| PATRICIA GIVENS-MORGAN, as Trustee, etc., | |
| Defendant and Respondent. | |

APPEALS from orders of the Superior Court of Los Angeles County, Jonathan L. Rosenbloom, Judge. Dismissed in part and affirmed in part.

Debra Ann Reid, in pro. per., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

————————————

Plaintiff Debra Ann Reid appeals three orders: an October 30, 2024 order denying Reid's ex parte application for a preliminary injunction and a November 21, 2024 order granting Defendant Patricia Givens-Morgan's motion to expunge a lis pendens and awarding her attorney fees and costs (case No. B342837); and a January 31, 2025 order denying Reid's ex parte application for a preliminary injunction (case No. B347344). We lack jurisdiction to review the lis pendens ruling and dismiss that portion of that appeal. We affirm the orders denying Reid's preliminary injunction applications.

## BACKGROUND

These appeals concern a house on West 134th Place in Gardena, California (the Property) that has been the subject of two prior appeals brought before different divisions of this appellate district. (*Reid v. Barnes* (Nov. 15, 2016, B261810) [nonpub. opn.] (*Reid I*); *Reid v. Givens-Morgan* (May 29, 2020, B299274) [nonpub. opn.] (*Reid II*).) We recite only those facts, as detailed in *Reid I* and *Reid II*, necessary to support our conclusion.

As Reid alleged in the prior actions, in 1996, Reid, her mother Ethel Barnes, and her stepfather Gerald Barnes[1] orally agreed the Barneses would obtain a loan through the United States Department of Veteran Affairs to purchase the Property while Reid would pay all expenses related to the acquisition and maintenance of the Property. Reid also alleged the parties agreed Reid would be the "true owner" and the Barneses would transfer the deed to the Property to her upon her request.

---

[1]    We refer to the Barneses by their first names for clarity. We intend no disrespect.

2

In 2012, Reid sued the Barneses for breach of contract (the 2012 Lawsuit), among other causes of action, after the Barneses claimed the Property was theirs and refused Reid's request to transfer the deed. Following a bench trial in April, May, and June 2014, the trial court found the Barneses agreed to purchase the Property for Reid and her children, but Reid did not satisfy her end of the bargain because she failed to pay loan payments in full or on time. In *Reid I*, Division Seven affirmed the court's ruling, except for a portion of the judgment that awarded the Barneses $39,800 on their cross-complaint. (*Reid I, supra,* B261810.) Division Seven also rejected Reid's new theory on appeal that the evidence established a resulting trust because she failed to prove "the precise amount of consideration" she furnished toward the purchase price. (*Ibid.*)

In December 2016, Ethel passed away. In February 2017, Gerald created the Gerald Barnes Family Trust 2017 (the Trust) and included the Property as a Trust asset. The Trust stated that upon Gerald's death, his stepdaughters Patricia Givens-Morgan, as co-trustee, and Sylvia Givens-Dunning would receive an equal interest in the Property. As for Reid, the Trust stated, "[Gerald] acknowledges that he has another daughter[,] Reid . . . . [Gerald] does not want [Reid] receive[] anything from his estate after his death. There should be no room for her to contest. If [Reid] contest[s], I want [Givens-Morgan and Givens-Dunning] give [*sic*] her $1.00 (One Dollar)." (Underscoring omitted.)

In March 2017, Reid sued Gerald again, alleging the 1996 agreement made her the beneficiary of a resulting trust in the Property (the 2017 Lawsuit). Gerald cross-complained to quiet title in the Property. Following a bench trial in

October 2018, the trial court rejected Reid's ownership claim on the ground of res judicata and quieted title for Gerald. In *Reid II*, a panel of this Division affirmed, holding the claim preclusion aspect of res judicata precluded Reid's claim to an ownership interest in the Property. (*Reid II, supra,* B299274.)

While *Reid II* was pending, Gerald passed away in October 2019. In 2020, Reid filed a petition in probate court contesting the validity of the Trust. Relevant here, Reid's operative Fourth Amended Petition claims she had an ownership interest in the Property pursuant to the 1996 agreement.

On July 9, 2024, Reid recorded a lis pendens on the Property. On October 2, 2024, Givens-Morgan moved to expunge the lis pendens, arguing the 2012 and 2017 Lawsuits established Reid cannot demonstrate the probable validity of her claim on the Property. The motion also requested attorney fees and costs under Code of Civil Procedure section 405.38.[2] On November 21, 2024, the court held a hearing and granted the motion to expunge, reasoning that under the doctrine of res judicata, Reid failed to demonstrate the probable validity of a real property claim. The court also awarded Givens-Morgan $3,375 in attorney fees and costs.

While the motion to expunge was pending, Reid filed an ex parte application for a preliminary injunction enjoining Givens-Morgan from disposing of the Property on October 24, 2024. Reid also sought an order setting aside an interspousal transfer grant deed executed by Givens-Morgan's husband

---

[2]     Undesignated statutory references are to the Code of Civil Procedure.

4

granting the Property to Givens-Morgan as her sole and separate property. On October 30, 2024, the trial court denied the application, reasoning the lis pendens adequately protected Reid's interests and she did not provide adequate notice of her request to set aside the interspousal deed.

On January 30, 2025, Reid filed another ex parte application for a preliminary injunction enjoining Givens-Morgan from disposing of the Property. The next day, the trial court denied the application, reasoning that in light of the lis pendens ruling, Reid was not likely to prevail on the merits.

Reid filed separate notices of appeal from these orders. We consolidated the appeals.

## DISCUSSION

**I.      We Consider Reid's Challenge to the January 31, 2025 Order Denying Her Ex Parte Application for a Preliminary Injunction**

Reid's opening brief argues we should reverse the trial court's determination that res judicata barred her claim to an ownership interest in the Property.

Because the trial court made that finding in connection with an order expunging a lis pendens, we harbored doubts about jurisdiction. (See § 405.39 ["No order or other action of the court under this chapter [dealing with expungement of a lis pendens,] shall be appealable. Any party aggrieved by an order made on a motion under this chapter may petition the proper reviewing court to review the order by writ of mandate."].)

After we requested further briefing on the topic (Gov. Code, § 68081), Reid filed a response conceding she "erred" in directly appealing the November 2024 order granting Givens-Morgan's

5

motion to expunge and awarding her attorney fees and costs. However, Reid contends we can review her challenge to the trial court's November 2024 determination that she failed to demonstrate the probable validity of a real property claim in conjunction with the court's January 2025 ruling on the application for preliminary injunction.

We will review that November 2024 determination to the extent it served as the basis for the trial court's January 31, 2025 order denying Reid's ex parte application for a preliminary injunction. (See § 904.1, subd. (a)(6) [orders refusing to grant an injunction are appealable]; *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 648–649 ["appellate review following [an appealable order] properly encompasses 'any intermediate ruling, proceeding, order or decision' of the trial court that 'involves the merits' or 'necessarily affects' the [appealable order] or 'substantially affects the rights of a party . . . ' "].)

Reid's appeal from the November 21, 2024 order granting Givens-Morgan's motion to expunge and awarding her attorney fees and costs is dismissed for lack of jurisdiction. (§ 405.39.)

Reid has abandoned her challenge to the October 30, 2024 order denying the earlier ex parte application by failing to address it in her opening brief. (See *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1282 [arguments not made in opening brief are deemed abandoned].)

6

## II. The Trial Court Properly Denied Reid's January 30, 2025 Ex Parte Application for a Preliminary Injunction

### A. Relevant Principles of Law and Standard of Review

Section 526 authorizes trial courts to issue injunctions during litigation. (*County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 315 (*T.C.E.F.*).) The decision whether to issue a preliminary injunction requires the court to weigh two interrelated factors: (1) the likelihood the moving party will prevail on the merits at trial; and (2) the relative balance of interim harms that are likely to result from granting or denying a preliminary injunction. (*Ibid.*)

"[C]laim preclusion and issue preclusion [are] two separate 'aspects' of an overarching doctrine" of res judicata. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823.) Claim preclusion, sometimes called res judicata, "prevents relitigation of the 'same cause of action' in a subsequent lawsuit between the same parties or their privities." (*Bair v. California Department of Transportation* (2026) 119 Cal.App.5th 579, 592 (*Bair*).) "It applies when the subsequent lawsuit ' "involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." ' [Citation.] It bars litigation not only of issues that were actually raised in the prior case but those that could have been, but were not, raised." (*Ibid.*)

Generally, a trial court's "ruling on an application for a preliminary injunction is reviewed for an abuse of discretion." (*T.C.E.F.*, *supra*, 246 Cal.App.4th at p. 315.) But when the challenged aspect is the court's resolution of a question of law, review is de novo. (*Id.* at p. 316.)

### B.    Analysis

We conclude the trial court correctly found res judicata barred Reid's ownership claim in the Property. All the elements of claim preclusion are present.

In the 2012 and 2017 Lawsuits, Reid asserted causes of action claiming a right to ownership of the Property. In this action, Reid asserts the same "primary right" to an ownership interest in the Property. (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 [for purposes of res judicata, "the invasion of one primary right gives rise to a single cause of action"].)

The 2012 and 2017 Lawsuits and this action involved the same parties or their privities. Reid was the plaintiff in all three actions. Gerald was a defendant in the 2012 and 2017 Lawsuits, and Givens-Morgan, the defendant in this action, is in privity with Gerald, having succeeded him as an owner of the Property. (*Villarroel v. Recology, Inc.* (2023) 97 Cal.App.5th 762, 782 [privity refers to, among other things, a mutual or successive relationship to the same rights of property].)

Judgments were entered against Reid in the 2012 and 2017 Lawsuits, and the judgments are final.

Reid does not dispute the elements of claim preclusion are met. Rather, she contends two "new facts" not in existence at the time of the prior actions render res judicata inapplicable. Reid claims on October 12, 2018—immediately after the bench trial in the 2017 Lawsuit—Gerald approached her and orally agreed to renew and continue the 1996 agreement. She also claims that in accord with this promise, she continued to make mortgage payments on the Property, the first of which occurred on November 8, 2018. We are not persuaded.

The exception Reid cites only "encompasses claims based on rights that arise after the filing of the complaint in the first action, but before judgment is entered." (*Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 227.) Reid's ownership claim did not arise after the 2012 and 2017 Lawsuits; the claim arose in 1996. As Reid alleges in her Fourth Amended Petition, "Legal title to the [Property] should be conveyed to Reid in accordance with the terms of the *1996 oral agreement . . . ."* (Italics added.)

Further, Reid could have raised the issue of Gerald's alleged October 12, 2018 promise while the 2017 Lawsuit was still pending. The trial court in the 2017 Lawsuit issued its statement of decision finding against Reid on her property claim and quieting title for Gerald on December 20, 2018. The court entered judgment on July 18, 2019. There is no indication Reid attempted to raise the issue of the alleged promise before the court entered judgment. Having failed to raise that issue in the 2017 Lawsuit, Reid may not do so now. (*Bair, supra,* 119 Cal.App.5th at p. 592 [claim preclusion also bars litigation of issues " 'that could have been, but were not, raised' "].)

In short, because claim preclusion bars Reid's ownership claim to the Property, the trial court appropriately denied her January 30, 2025 application for a preliminary injunction on the ground she was unlikely to prevail on the merits. We need not and do not consider whether issue preclusion also barred Reid's ownership claim.

**DISPOSITION**

The October 30, 2024 and the January 31, 2025 orders denying Reid's preliminary injunction applications are affirmed. The appeal from the November 21, 2024 order granting Givens-Morgan's motion to expunge and awarding her attorney fees and costs is dismissed for lack of jurisdiction. No costs are awarded.


RICHARDSON, J.

WE CONCUR:


CHAVEZ, Acting P. J.


GOORVITCH, J.